Mary Alice GLEASON, Individually and as Administratrix of the Estate of Michael L. Gleason, Deceased, and Michele Dawn Gleason and Mark William Gleason, Minors, through their Mother and Next Friend, Mary Alice Gleason, Appellees,

v.

The CITY OF OKLAHOMA CITY, Oklahoma, and the Board of County Commissioners of the County of Oklahoma, Appellants.

No. 58013.

Court of Appeals of Oklahoma, Division No. 2.

March 22, 1983.

As Corrected March 25, 1983.

Rehearing Denied April 13, 1983.

Certiorari Denied June 21, 1983.

Released for Publication by Order of Court of Appeals June 24, 1983.

Arnold D. Fagin, M. Elizabeth Scott, Nancy K. Anderson, Fagin, Hewett, Mathews & Fagin, Oklahoma City, for appellees.

Walter M. Powell, Municipal Counselor, Diane L. Davis, Asst. Municipal Counselor, Oklahoma City, for appellant City. Frank E. Walta, Asst. Dist. Atty., Oklahoma City, for appellant County.

MEANS, Judge.

City of Oklahoma City (City) and Board of County Commissioners of Oklahoma County (County) defendants below, appeal an order of the trial judge construing provisions of the Political Subdivision Tort

Claims Act, 51 O.S.Supp.1978 §§ 151–170. Trial judge determined that plaintiffs were individual claimants for the purposes of the Act and that each was entitled to the maximum liability limit of $50,000 from each separate political subdivision.

Defendants urge that the trial judge erred in determining that there were three claims as opposed to one claim in an action for wrongful death. We agree with the trial judge's conclusions and affirm.

This action arose from a three car collision on Northwest Grand Boulevard in Oklahoma City in February 1979. Prior to the accident City and County had entered into an agreement for the widening and reconstruction of Northwest Grand Boulevard. On the date of the accident, Michael L. Gleason was driving north in the left hand lane of traffic when he was hit head-on by Robert Paul Tietjen, who was driving the wrong way in the same lane. Gleason was killed. His survivors include a widow and two minor children. The widow filed this wrongful death action individually, as administratrix of the estate, and as guardian of the two minor children.

Tietjen settled with plaintiffs before suit was filed. Oklahoma Publishing Company (OPUBCO) was a named defendant based on an agency relationship with Tietjen. This issue was resolved in OPUBCO's favor on a motion for summary judgment. Plaintiffs also filed an appeal as to this ruling, decided this date in a separate opinion.

A jury found damages for the plaintiffs totaling $581,819.63. Based on comparative negligence theories, defendant City was found liable for 28 percent of the negligence or $162,909.50. County was found liable for 21 percent, or $122,182.10. Of the remainder, 7 percent was attributed to decedent and the other 44 percent to Tietjen. These findings are not contested by the defendants on appeal.

At the pretrial the trial judge determined there was one cause of action but three separate claimants under the wrongful death theory. He reserved the issues of the distribution of any proceeds of a jury verdict pursuant to the wrongful death statute, 12 O.S.Supp.1978 § 1053, and the Political Subdivision Tort Claims Act, 51 O.S. Supp.1978 §§ 151–170. Judgment was subsequently entered against City in the amount of $150,000 and against County for $122,182.10.

The defendants' position is that the administratrix is the exclusive preference listing for the plaintiff in the wrongful death action; that she acted in a representative capacity for all the beneficiaries; that she is the sole "claimant" for the cause of action under the Political Subdivision Tort Claims Act; and, that the Act limits each defendant's liability to her as sole "claimant" at $50,000.

It is undisputed that the administratrix is the proper person to prosecute the cause of action for wrongful death. Title 12 O.S. Supp.1978 § 1053. It is also undisputed that the widow and minor children each has a beneficial interest in a wrongful death cause of action.

These beneficial interests of the decedent's survivors are distributed to them according to their claims for damages allowed by section 1053. Each beneficiary has a separate loss which may be recovered under one cause of action and measured by the allowable damages. Section 1053 specifically lists the various claims which different categories of survivors may make. For the widow "grief and loss of consortium"; for the children "grief and loss of companionship"; for the widow and children "mental pain and anguish suffered by the decedent" as well as their "pecuniary loss" shall be distributed according to the loss of each claimant. The damages are thus distributed to specific individuals, not necessarily the person who files the suit. The statute recognizes that different surviving individuals will have different losses. The statute also recognizes the right of those individuals to recover for those losses.

As the plaintiffs contend, wrongful death as an action was unknown at common law. Consequently, under Oklaho-

ma rules of statutory construction the court must liberally construe section 1053 to promote its object and to promote justice. Titles 12 O.S.1981 § 2 and 25 O.S.1981 § 29. There is no doubt that the wrongful death statutes were meant to compensate all of the decedent's survivors who might claim damages through a single cause of action.

The reasoning of City and County would have the same meaning derive from the terms "claimant" and "cause of action." These defendants cannot deny that a cause of action may consist of numerous claims of multiple claimants all arising from a single accident or occurrence. Black's Law Dictionary, 314 (4th ed. 1968), defines claimant as "[o]ne who claims or asserts a right." Because the decedent's widow and two children were seeking to recover damages for their own particular losses, they are each separate claimants.

We conclude that the trial judge was correct in treating each surviving person as a claimant for his or her right to damages for his or her individual loss.

The trial court held that each survivor was entitled to recover the maximum damages provided under the Political Subdivision Tort Claims Act, 51 O.S.Supp.1978 § 154. Section 154, as applicable to this case, provides:

"A. The liability of a political subdivision or an employee on claims within the scope of this act shall not exceed:

1. Twenty-five Thousand Dollars ($25,000.00) to any claimant for any number of claims for damage to or destruction of property, including consequential damages arising out of a single accident or occurrence;

2. Fifty Thousand Dollars ($50,000.00) to any claimant for all other claims arising out of a single accident or occurrence; or

3. Three Hundred Thousand Dollars ($300,000.00) for any number of claims arising out of a single occurrence or accident."

■ The word "claimant" or "claim" is not defined in the Act. Defendants con-

tend that because the administratrix is the only "representative" entitled to bring the wrongful death action, she is the sole "claimant" referred to in subsection (A)(2) of section 154. Thus, defendants reason that the extent of the total liability for each defendant is $50,000. We do not construe the Act within such a narrow scope. It cannot be presumed that the legislature intended any part of section 154 to be without meaning or superfluous. The defendants' interpretation of subsection 154(A)(2) would render that section in conflict with 154(A)(3). Subsection (A)(3) of section 154 provides for the maximum recovery in situations involving multiple claims:

"3. Three Hundred Thousand Dollars ($300,000.00) for any number of claims arising out of a single occurrence or accident."

Obviously the Act contemplates multiple claims or losses arising out of a single accident. That is the situation here.

■ The Political Subdivision Tort Claims Act, as a derogation of the common law, must also be read broadly to promote the object of the Act as well as to further justice. Title 25 O.S.1981 § 29. The Act establishes broad liability for political subdivisions. Section 153 defines the scope of liability so that:

"Each political subdivision of this state shall be *liable for loss* resulting from its torts or the torts of its employees...." (emphasis added)

Section 152 defines loss:

"3. 'Loss' means injury or death of a person...."

Each survivor of Michael L. Gleason had a loss or claim recognized by section 1053 of the wrongful death statutes and recognizable by sections 153 and 154 of the Political Subdivision Tort Claims Act. The constraint of section 1053 requiring the joinder of such claims to be prosecuted by the administratrix was not intended to deprive the beneficiaries of their right to assert separate losses. Such a requirement pro-

motes judicial efficiency and was not meant to limit those parties who could claim losses as a result of the decedent's untimely death.

 The provisions of the Political Subdivision Tort Claims Act are clear and leave no room for conjecture by the court. The rule of plain meaning holds that "there is no room for construction or provision for further inquiry when the Legislature plainly expresses its intent." *Duesterhaus v. City of Edmond,* Okl., 634 P.2d 720 (1981). The plain intent of subsection 154(A)(2), allows each claimant to recover a maximum of $50,000 from each of the defendants.

Affirmed.

BACON, P.J., and BOYDSTON, J., concur.